**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**

| IN RE APPLICATION OF YS GOLD REAL ESTATE LTD. AND YS GOLD INVESTMENTS LTD. FOR JUDICIAL ASSISTANCE PURSUANT TO 28 U.S.C. § 1782 | Case No. _____ |
| --- | --- |

**_EX PARTE_ APPLICATION FOR JUDICIAL ASSISTANCE IN OBTAINING EVIDENCE FOR USE IN A FOREIGN PROCEEDING PURSUANT TO 28 U.S.C. § 1782 AND SUPPORTING MEMORANDUM OF LAW**

Applicants YS Gold Real Estate Limited ("YSRE") and YS Gold Investments Limited ("YSI", and, together with YSRE, "Applicants") respectfully submit this _Ex Parte_ Application for Judicial Assistance in Obtaining Documentary Evidence for Use in a Foreign Proceeding Pursuant to 28 U.S.C. § 1782 (the "Application"). In support, Applicants respectfully state as follows:

## I.    <u>INTRODUCTION</u>

The facts relevant to this Application are set forth below and in the Declaration of Yitzhak Yaari filed herewith ("Yaari Declaration").

This is an _ex parte_ application in aid of legal proceedings in Israel related to the sale of several real estate properties in Israel from agents of the Church of England to YSRE and YSI, Israeli entities that manage and procure real estate in Israel. The proceedings were initiated by the Vincent Society Israel (the Anglican Church) ("Vincent Association") and the Israeli Trust of the Anglican Church ("Anglican

1

Trust"; together, the "Anglican Associations"), both of which are Israeli entities and agents of the Church of England in the United Kingdom (the "Church"), against YSRE and YSI. Yaari Decl. ¶¶ 4, 6, 9, 11.

Applicants' relationship with the Anglican Associations began at the end of 2023, when the Anglican Associations were experiencing significant financial distress and sought financial assistance. Yaari Decl. ¶ 15. In connection with that distress, they requested that Applicants provide loans secured by liens on several properties owned and managed by the Anglican Associations. *Id.* ¶¶ 15–29. When the Anglican Associations' financial distress became more acute, several properties were proposed for sale to the Applicants. Applicants agreed to rehabilitate one of those properties— then derelict— at their own expense on the condition that they could purchase it once it had been rehabilitated. *Id.* ¶ 17. Applicants ultimately purchased three properties from the Anglican Associations; each board-approved and reflected in fully executed sale agreements. *Id.* ¶¶ 33–36.

In accordance with a signed letter from the chief executive of the Vincent Association executed on the same day as the sale agreements, and at its express direction, YSRE and YSI transferred millions of dollars to an account in the name of the Province of Reconciliation, Inc., connected to the Continuing Evangelical Episcopal Communion, Inc. ("CEEC.CHURCH"), both of which are Florida not-for-profit entities with their principal places of business in Jacksonville, Florida. *Id.* ¶ 41,

2

Exs. 7–8; Declaration of Robert B. Kearney ("Kearney Declaration") Exs. A, B. The account is maintained at a JP Morgan Chase Bank, N.A. branch in St. Johns, Florida. Yaari Decl. ¶ 40, Exs. 5–6.

After Applicants transferred the money for the purchase of the properties and the funds were transferred to the Province of Reconciliation JP Morgan Chase account, the Anglican Associations initiated proceedings in Israel (the "Israeli Proceedings") seeking to undo the sale of two of the three properties to Applicants: (1) the prior Voice of Israel building located at 25 Shabtai Petrushka Street in Jerusalem ("25 Petrushka Street"); and (2) the Anglican International School in Jerusalem located at 82 Ha-Nevi'im Street in Jerusalem ("82 Ha-Nevi'im Street", and, together with 25 Petrushka Street, the "Contested Properties"). Yaari Decl. ¶¶ 9, 13.

The Anglican Associations claim that the various boards, assemblies, and committees which carefully considered and approved the sales did not understand the transactions and that some key documents were forged. These assertions strain credulity. *Id.* ¶¶ 33–40, 44, 45. So too does the Anglican Associations' claim that *none* of the millions transferred for the Contested Properties were received, and so they cannot pay anything back. *Id.* ¶ 44. Even after Applicants showed them the proof of the successful transfer, they refused to confirm receipt. *Id.* ¶ 44.

Applicants thus seek an order for subpoenas to issue to Respondents CEEC.CHURCH, the Province of Reconciliation, and JP Morgan Chase for modest

3

evidence from a short timeframe in order to establish that the sale of the properties was legitimate and that the funds were in fact received from the Applicants and that the Anglican Associations and their agents understood them to be related to the sale of the Contested Properties. This Application meets all of the statutory requirements of 28 U.S.C. § 1782, and all of the discretionary factors prescribed by the U.S. Supreme Court weigh in favor of granting the Application.

## II.     FACTUAL BACKGROUND

### A. The Anglican Associations Neglected Their Properties and Legal Status

The Vincent Society, a registered charity in England and Wales operating as the Church's Ministry Among Jewish People ("CMJ UK"), is one of ten official mission agencies of the Church of England. Yaari Decl. ¶ 10. A smaller branch organization, CMJ Israel, operates the CMJ in Israel through the two Anglican Associations. *Id.* ¶ 11. Both Anglican Associations operate in tandem, with approval required from both boards of directors for certain transactions and official decisions. *Id.* ¶ 12.

The Anglican Associations were in dire need of assistance with the properties they owned and managed when Applicants met them. Yaari Decl. ¶ 15. The Vincent Association was not in compliance with Israeli entity reporting laws, and did not, and could not, even maintain its own bank account. *Id.* ¶ 16. Its property, 25 Petrushka Street, was in an equally severe state of disrepair: it was not connected to the electrical grid, lacked proof of certificate of habitability, and relied on a neighbor for power. *Id.*

4

¶ 17. Other property owned by the Vincent Association in Tel Aviv also required refurbishment. *Id.* ¶ 18. Timothy Butlin, chairman of the board of the Vincent Association confirmed the physical and organizational dereliction in an email to one of the partners of YSRE and YSI, and that these issues were longstanding and severe. *Id.* ¶ 17.

**B. <u>YSRE and YSI Stabilized and Brought into Compliance the Anglican Association's Properties In Order to Purchase Them</u>**

The Anglican Associations first approached YSRE and YSI for relief from their real estate problems in 2024. Yaari Decl. ¶ 15. Facing severe financial strain to the point where they were going to be unable to pay their workers' pensions, representatives of the Anglican Association initiated contact with Applicants through Mordechai Weberman ("Weberman"), an agent of the Church, seeking a solution. *Id.* ¶¶ 15, 19, 20. Applicants had no prior connection to Weberman, and to whatever extent he was paid as a broker, it was through the Church. *Id.* ¶¶ 19–20.

1. <u>The Planned Acquisition of 82 Ha-Nevi'im Street</u>

As the result of negotiations with Rev. Aaron Eime ("Director Eime"), a director of both Anglican Associations, YSRE and YSI agreed to provide up to two $500,000 loans in exchange for two liens: one on 82 Ha-Nevi'im Street, and the other on a property in Tel Aviv. Yaari Decl. ¶ 21. The loan contained a clause that indicated

that the loans would become due in one year and, in the event of a sale prior to the year, the lender would be paid back first. *Id.*

Applicants provided one of the loans in March 2024 through a wholly owned and controlled entity Mishkenot Hauma Real Estate Limited ("Mishkenot Hauma"). Yaari Decl. ¶ 22. As directed by Anglican Association representatives, due to issues with the Vincent Association's bank accounts, Mishkenot Hauma was directed to send the money to the bank account of CMJ UK in the United Kingdom and to an account in Turkey. *Id.* ¶ 23. Around this time, Director Eime was promoted to General Director of CMJ UK. *Id.*

After transferring funds to the CMJ UK bank account, further attempts to transfer to the CMJ UK account bounced back more than once. Yaari Decl. ¶ 23. As a workaround, representatives of the Anglican Associations directed Mishkenot Hauma to transfer the remaining $500,000 to the JP Morgan Chase bank account of an Anglican organization in the United States, CEEC.CHURCH, to an account named the Province of Reconciliation. *Id.* ¶ 24.

CEEC.CHURCH, also known as the Continuing Evangelical Episcopal Communion, changed its name to the Confessing Anglican Church in August 2025. Kearney Decl. Ex. C. Bishop Robert Gosselin is listed as the Metropolitan and Provincial Archbishop of the Province of Reconciliation for CEEC.CHURCH. *Id.* Ex. D. Bishop Bill Prezzutti is also listed as a Bishop of CEEC.CHURCH. *Id.*

CEEC.CHURCH's registered address is a single-family home at 12966 Silver Oak Drive, Jacksonville, Florida 32223, and officers are listed as: President Robert Gosselin, Vice President Bill Pezzutti, and Secretary-Treasurer Patricia Lee Gosselin. *Id.* Ex. A. The Province of Reconciliation's registered address is the same single-family home at 12966 Silver Oak Drive, Jacksonville, Florida 32223, and lists the same officers: President Robert Gosselin, Vice President Bill Pezzutti, and Secretary-Treasurer Patricia Lee Gosselin. *Id.* Ex. B. William Pezzutti is listed as the owner of the house at 12966 Silver Oak Drive, Jacksonville, Florida 32223. Warranty Deed, Book 4450, Page 567, Official Records of Duval County.

CEEC.CHURCH operates out of Jacksonville, Florida, according to its Facebook page and press release regarding the name change. *Id.* Exs. D, E. Subsequent wire instructions for the same account listed a JP Morgan Chase branch address of 370 Village Oaks Drive, St. Johns, FL 32259. Yaari Decl. ¶ 40, Exs. 5–6.

In addition to the loans, and as part of the agreed process to eventually prepare 82 Ha-Nevi'im Street for sale, Applicants agreed to help the Anglican Associations restore the Vincent Association's legal good standing. Yaari Decl. ¶ 25. This required the establishment of a legal and accounting infrastructure. *Id.* To that end, YSRE and YSI assisted the Anglican Associations by connecting them to Weiss Schwarz Keidar, Law Office ("Weiss Schwarz Keidar"). *Id.*

Weiss Schwarz Keidar, retained by the Anglican Associations but financed by YSRE and YSI, performed an incredible amount of work for the Vincent Association, regularizing the board composition, filing documents with the land registry, updating five years of deficient annual reports, and appointing a certified accountant for the Vincent Association, among other work. Yaari Decl. ¶ 26. The Anglican Associations designated Attorney Kobi Ifrach ("Attorney Ifrach") with power of attorney to handle real estate transactions in line with the boards of directors' decisions and approval. *Id* ¶ 27.

2. The Planned Acquisition of 25 Petrushka Street

YSRE invested heavily in 25 Petrushka Street. Applicants remedied all outstanding code and regulatory violations, and secured the requisite certifications and approvals, thereby restoring the property to full legal compliance and making it suitable for lawful sale. Yaari Decl. ¶ 28. The Anglican Associations thus obtained the resolution of issues that they had been unable to fix themselves. *Id*. ¶ 28.

3. The Sale of the Migdal Hostel

The Anglican Associations wanted to sell the properties in the Vincent Association's name for additional cash, but its compliance status prevented them from doing so. Yaari Decl. ¶ 16. However, the Anglican Trust was compliant and owned a hostel in Migdal ("Migdal Hostel"), and offered to sell it to YSRE or YSI. *Id*. ¶ 29. The sale of the hostel to Applicants for approximately NIS 6.5 million proceeded after

8

it went through the established approval process. *Id.* ¶¶ 29–31. This included approval by the various boards of each of the Anglican Associations and execution of the sale agreement by a representative—here, Father Daryl Fenton ("CEO Fenton"), the chief executive officer and board member of both Anglican Associations, and David Zadok ("Zadok"), board member of both Anglican Associations. *Id.* ¶ 30. The transaction had guardrails: both YSRE and the Anglican Trust were represented by counsel in the transaction. *Id.* ¶ 31. The Anglican Associations do not contest the sale of the Migdal property. *Id.* ¶ 32.

**C. The Anglican Associations Sign Sale Agreements and Accept Applicants' Funds Transfers for the Contested Properties**

These herculean undertakings benefited the Anglican Associations enormously by adding to their coffers and providing them with working infrastructure—literally and legally. The Anglican Associations sought to further increase their liquidity by executing the previously contemplated sales of 82 Ha-Nevi'im Street and 25 Petrushka Street negotiated for NIS 60 million and NIS 7.5 million, respectively. Yaari Decl. ¶ 33. YSRE purchased 25 Petrushka Street, and YSI purchased 82 Ha-Nevi'im Street. *Id.* ¶¶ 33–43.

Consistent with the process followed in the sale of the Migdal property, meetings of the board of directors occurred, along with meetings of the general assembly and the audit committee of the Anglican Associations, were called for June

26, 2025, to approve the transactions. Yaari Decl. ¶ 34. Karen Schwarz of Weiss Schwarz Keidar represented to Applicants after all meetings that the assembly, board, and committee approved the transactions. *Id.* ¶ 34.

Multiple board members and officers executed the sale agreements and board approvals. For the Contested Properties, the following persons signed the documents:

- CEO Daryl Fenton

- David Zadok—a board member of both Anglican Associations

- Joy Dorothy Marshall, as the secondary authorized signatory of the Vincent Associations

- Philip Harris—a board member of CMJ UK and the Vincent Association and a Global Ecumenical Officer of CEEC.CHURCH, the church that oversees the Province of Reconciliation.

- Aaron Eime, director of CMJ UK and Audit committee member of Vincent Israel

- Levia Ann Saran, a member of the audit committee with Aaron Eime.

Yaari Decl. ¶ 36.

As part of the transaction, Attorney Ifrach, opened a trust account at Bank Leumi (King George Branch, Jerusalem) through his duly assigned power of attorney in the name of the Vincent Association ("Trust Account"), to which YSRE transferred NIS 1 million and NIS 9 million as initial payments on the Contested Properties. Yaari

10

Decl. ¶ 37. Receipts were issued by Attorney Ifrach for these amounts to YSI. *Id.* ¶¶ 38, 39, Exs. 1–4. One of the documents signed by CEO Fenton directs the Anglican Associations' attorney, Attorney Ifrach, to transfer NIS 10 million to the same JP Morgan Chase account of the Province of Reconciliation to which Applicants had been directed to transfer funds in 2024. *Id.* ¶ 40, Exs. 5–6. Attorney Ifrach, as trustee for the accounts, later confirmed that the amounts in the Trust Account were duly transferred in July and August 2025 to the Province of Reconciliation JP Morgan Chase account in compliance with the document signed by CEO Fenton. *Id.* ¶¶ 41–42, Exs. 7–8. YSRE and YSI registered cautionary notes at the Israeli land registry to record their purchases of the Contested Properties. *Id.* ¶ 43.

**D. The Anglican Associations Commence the Israeli Proceedings to Unwind the Property Sales but Keep Applicants' Millions**

Once the NIS 10 million were transferred to the Province of Reconciliation JP Morgan Chase account, the Anglican Associations commenced the Israeli Proceedings, seeking to enjoin and rescind the sales as invalid, all evidence to the contrary. Yaari Decl. ¶ 44.

In the Israeli Proceedings, both CEO Fenton and Marshall admit they signed the sale documents, although they also maintain that they did not know what they were signing. *Id.* ¶ 45. The Anglican Associations also maintain that the signatures of Harris and Levia Ann Saran were forged, along with many of the documents and

11

minutes, and that the necessary board meeting regarding the sale never even occurred, despite the attendance of their counsel at the meetings. *Id.* ¶ 45.

Applicants seek to clear the title to what is rightfully theirs. They are good faith purchasers who executed large transfers and fair sale agreements for the Contested Properties. The Anglican Associations now contend that they may have neither the properties, *nor the millions paid for them*, all because of fabricated claims that the deal was not approved and no funds were transferred. Yaari Decl. ¶¶ 44–45. This claim cannot stand given that the sale of the Contested Properties followed the same procedure as the prior sale of the Migdal hostel, and that the money went to their account and from there to the same account as directed when providing an initial loan. *Id.* ¶¶ 33–43.

Applicants have commenced this action to obtain evidence that nothing was out of the ordinary here, and that the Anglican Associations did receive the funds sent for both the loans in 2024 and for the sale of the Contested Properties in 2025, and that the Anglican Association and their affiliates accepted those transfers. Applicants' Israeli counsel seeks to use the documents for precisely that reason: to oppose the injunction on the sale of land and to trace the funds that were properly paid to the Anglican Associations and their affiliates as further proof of their assent and the closing of the deal.

## III. EVIDENCE SOUGHT

Applicants seek assistance from the United States District Court for the Middle District of Florida to serve subpoenas for (1) records maintained by Respondent JP Morgan Chase Bank relating to the transfers from YSRE and YSI to the Province of Reconciliation account including but not limited to wire transfer records, account statements, deposit records, internal transfer records, and documentation reflecting the disposition of those funds after receipt; and (2) documents and communications in the possession, custody or control of the CEEC.CHURCH and the Province of Reconciliation. Yaari Decl. ¶¶ 4, 9, 47.

The requested discovery is directly relevant and necessary for use in the Israeli proceedings to defend against the Anglican Associations' claims and to prove that the transactions were legitimate and that the properties were paid for. *Id.* ¶¶ 46–48. The Anglican Associations deny having received the funds transferred by Applicants. *Id.* ¶ 44. Accordingly, documentary evidence confirming receipt of the funds by the CEEC.CHURCH and the Province of Reconciliation—entities designated by or acting at the direction of the Anglican Associations—is critical to establishing the flow of funds and refuting those denials. *Id.* ¶ 44–48. In addition, records reflecting the financial activity in the Province of Reconciliation account after the deposits were made are necessary to determine how the funds were handled, transferred, or otherwise dissipated. *Id.* Evidence of the funds' further transfer will be used prove that the sale proceeds were received by the Church and/or its agents and the documents

13

within the possession of the Province of Reconciliation and CEEC.CHURCH will establish that Church of England agents not only received the transfers, but expected them and internally acknowledged that they were for the sale of the Contested Properties. *Id.*

## IV.   <u>ARGUMENT</u>
### A. <u>The Standard for Granting Relief</u>

"Section 1782 is the product of congressional efforts, over the span of nearly 150 years, to provide federal-court assistance in gathering evidence for use in foreign tribunals." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004).  Section 1782 "provide[s] for assistance in obtaining documentary and other tangible evidence as well as testimony." *Id.* at 248.

In the Eleventh Circuit, Section 1782 applications must meet four statutory requirements. *Sergeeva v. Tripleton, Int'l Ltd.*, 834 F.3d 1194, 1198–99 (11th Cir. 2016). When the four statutory requirements are met, courts consider four discretionary factors, bearing in mind Section 1782's "twin aims of 'providing efficient assistance to participants in international litigation and encouraging foreign countries by example to provide similar assistance to our courts.'" *Intel*, 542 U.S. at 252; *Saint Bonnet v. Eli Lilly Interamerica Inc. S.A. (In re Request for Judicial Assistance from the Nat'l Court of Original Jurisdiction No. 68 in Buenos Aires, Arg.)*, No. 3:19-mc-31-J-39, 2019 U.S. Dist. LEXIS 184629, at \*4–5 (M.D. Fla. Oct. 25, 2019).

14

District courts may, and indeed typically do, grant Section 1782 applications brought on an *ex parte* basis. *E.g., In re Clerici*, 481 F.3d 1324 (11th Cir. 2007) (affirming denial of motion to vacate order granting *ex parte* Section 1782 application); In re Vedam, No. 8:22-mc-26, 2022 U.S. Dist. LEXIS 219637, at *5 (M.D. Fla. Nov. 3, 2022) (noting that "[d]istrict courts may grant applications under Section 1782 on an *ex parte* basis" and collecting cases); *In re Braga*, 272 F.R.D. 621, 625 (S.D. Fla. 2011) ("most § 1782 applications (at least in this district) are filed and decided ex parte"); In re Fundo De Liquidação Financeira—Fundo De Investimento Em Direitos Creditórios Não Padronizado, No. 8:21-mc-110, 2021 LX 24970 (M.D. Fla. Sep. 23, 2021) (granting *ex parte* application).

There are no due process concerns with granting Section 1782 relief *ex parte* because "a respondent's due process rights are not violated because he can later challenge any discovery request by moving to quash pursuant to Federal Rules of Civil Procedure 45(c)(3)." *In re Vedam*, 2022 U.S. Dist. LEXIS 219637, at *5–6 (citing *Gushlak v. Gushlak*, 486 F. App'x 215, 217 (2d Cir. 2012)).

**B. <u>The Application Meets All Four Statutory Requirements of 28 U.S.C. § 1782</u>**

The Application meets the four statutory requirements of Section 1782. The statute requires that: (1) the person from whom discovery is sought must reside or be found in the district in which the application is made; (2) the discovery is "for use" in a

proceedings before a foreign or international tribunal; (3) the application is made "by a foreign or international tribunal" or "any interested person"; and (4) the request must seek evidence, whether "testimony or statement" of a person or the production of "a document or other thing". *Sergeeva*, 834 F.3d at 1198–99.

1. The Province of Reconciliation, CEEC.CHURCH, and the JP Morgan Chase Branch Are Found in This Jurisdiction

Per its corporate records, the Province of Reconciliation's address is a single-family home at 12966 Silver Oak Drive, Jacksonville, FL 32223. Kearney Decl. Ex. B. CEEC.CHURCH lists the same address. *Id.* Ex. A. Not only is their registered address the same, but both entities appear to operate in this District as well. The corporate records of both the Province of Reconciliation and CEEC.CHURCH list Robert Gosselin as President, Bill Pezzutti as the Vice President, and Patricia Lee Gosselin as the Secretary Treasurer. *Id.* Exs. A, B. According to its website, the Province of Reconciliation is an "affinity-based province of the Confessing Anglican Church", formerly known as CEEC.CHURCH prior to a name change in August 2025 (*id.* Ex. C), and operates under the direction of Gosselin, its Metropolitan and Provincial Archbishop (*id.* Exs. C, D). The Facebook page of the Confessing Anglican Church also lists the location as Jacksonville, Florida. *Id.* Ex. E. 12966 Silver Oak Drive, Jacksonville, Florida 32223, is also seemingly the home address of Bishop Bill Pezzutti.

16

The JP Morgan Chase branch that received the funds is located at 370 Village Oaks Drive, St. Johns, FL 32259. Yaari Decl. ¶¶ 40–42, Exs. 5–8. Respondents therefore reside and are found in the Middle District of Florida, and Applicants' Application meets Section 1782's first statutory requirement. *See, e.g., Sergeeva,* 834 F.3d at 1198–1200.

2. <u>The Discovery Sought is For Use in a Proceeding in a Foreign Tribunal.</u>

"[T]he term 'for use' in Section 1782 has only its ordinary meaning—that the requested discovery is something that will be employed with some advantage or serve some use in the proceeding." *Alpine Partners (BVI) L.P. v. Guinan*, No. 2:24-mc-5, 2024 U.S. Dist. LEXIS 103094, at *3–4 (M.D. Fla. Apr. 15, 2024) (quoting *In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 132 (2d Cir. 2017)) (citation modified), *report and recommendation adopted* No. 2:24 -cv-412, 2024, U.S. Dist. LEXIS 92284 (M.D. Fla. May 23, 2024).

Applicants seek to use the discovery in the ongoing proceedings in Israel, which satisfies the "for use" requirement of the Section 1782. The Israeli Proceedings to enjoin the sale of land are subject to the exclusive jurisdiction of the courts of Israel. Yaari Decl. ¶¶ 9, 44. The proceedings are active and ongoing in the courts of Israel. *Id.* ¶¶ 9, 44, 46. Parties to a proceeding have the right to introduce evidence to make or defend against claims. *Id.* ¶ 52. Israeli counsel intends to use the documents and evidence being sought to refute the allegations brought in the Israeli Proceedings and

defend the propriety of the sale of the Contested Properties. Yaari Decl. ¶ 46. The discovery sought is therefore for use in a foreign proceeding and the Application satisfies Section 1782's second statutory requirement.

3. The Applicants Are Interested Persons

A person who has "participation rights" and "possesses a reasonable interest in obtaining judicial assistance . . . qualifies as an interested person within any fair construction of that term." *Intel*, 542 U.S. at 256–57 (2d Cir. 2004) (citations omitted) (citation modified). "The legislative history to § 1782 makes plain that 'interested person' includes a party to the foreign . . . litigation." *In re Vedam*, 2022 U.S. Dist. LEXIS 219637, at *6 (citing *Lancaster Factoring Co. Ltd. v. Mangone*, 90 F.3d 38, 42 (2d Cir. 1996)).

Here, Applicants are "interested person[s]" in their capacities as parties to the Israel Proceedings. Yaari Decl. ¶ 9. The Application therefore meets the third statutory requirement under Section 1782.

4. The Application Seeks Documents from Respondents

Documentary evidence is "evidence" within the meaning of Section 1782. *In re Clerici*, 481 F.3d 1324, 1331–32 (11th Cir. 2007). Section 1782 authorizes the production of documents from a respondent with "the legal right to obtain the documents requested upon demand." *Sergeeva*, 834 F.3d at 1201.

Here, Applicants seek documents from Respondents in the form of records and communications, all of which should be maintained in the ordinary course of business. Respondents have possession and/or a legal right to demand the documents and communications sought. JP Morgan Chase maintains wire transfer records by law. 31 C.F.R. § 1020.410. And the Province of Reconciliation and CEEC.CHURCH operate through their agents—President Robert Gosselin, Vice President Bill Pezutti, and Secretary-Treasurer Patricia Lee Gosselin—whose communications relating to Respondents' affairs are business records. Entities have the legal right to obtain upon demand any records kept in the ordinary course of business. *Sergeeva*, 834 F.3d at 1201. The Application therefore meets the fourth statutory requirement under Section 1782.

**C. <u>The Application Should Be Granted in the Exercise of This Court's Discretion</u>**

Once the Court has determined that the mandatory requirements for relief under Section 1782 are met, the Court is free to grant discovery in its discretion. The four discretionary factors identified by the Supreme Court in *Intel* weigh heavily in favor of granting the relief requested herein. *See Intel*, 542 U.S. at 264–65.

1. <u>The Respondents Are Not Participants in the Israeli Proceedings</u>

The Court should exercise its discretion in granting the application is neither Respondent is a party to the Israeli proceedings, nor are they likely to become a party to those proceedings. "'[N]onparticipants in the foreign proceeding may be outside the

19

foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid.'" *In re Glozman*, No. 25-MC-24525, 2026 U.S. Dist. LEXIS 22687, at *10 (S.D. Fla. Feb. 3, 2026) (quoting *Intel*, 542 U.S. at 264). This weighs heavily in favor of granting the Application. *Alpine Partners*, 2024 U.S. Dist. LEXIS 103094, at *5 (citing *Intel*, 542 U.S. at 264); *Spain v. Hubener Versicherungs AG (In re Request for Jud. Assistance from the First Instance Ct. No. 11 in Vigo)*, No. 5:25-mc-6, 2025 U.S. Dist. LEXIS 158160, at *6–7 (M.D. Fla. Aug. 15, 2025).

Here, CEEC.CHURCH, the Province of Reconciliation, and JP Morgan Chase are not parties to the Israeli Proceedings. The Contested Properties that are the subject of the Israeli Proceedings belonged to the Anglican Associations, who are contesting the sale to YSRE and YSI. Furthermore, the Province of Reconciliation, CEEC.CHURCH, and JP Morgan Chase are located in the United States, and Israeli courts do not have the ability to issue orders with extraterritorial effect over entities that are not within its jurisdiction. Thus, the Israeli court could not compel production of the information sought from Respondents. Yaari Decl. ¶¶ 49–50, 53.

2. <u>The Israeli Proceedings Are Adjudicative Proceedings in which Applicants Will Submit Evidence of the Closed Transaction</u>

Second, the Court may consider "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance."

*Intel*, 542 U.S. at 264. Courts in this district have granted Section 1782 relief where "there is no indication that the [foreign tribunal] would not be receptive to the testimonial or documentary evidence sought through the Application." *In re Vedam*, 2022 U.S. Dist. LEXIS 219637, at *12 (citing *In re Clerici*, 481 F.3d at 1335).

Other courts asked to address the nature of Israeli tribunals and the character of their proceedings have determined that those courts and proceedings are receptive to the evidence sought through Section 1782. *See In re Klein-Bentsur*, No. 2:18-17218, 2019 U.S. Dist. LEXIS 25472, at *10 (D.N.J. Feb. 15, 2019) (granting *ex parte* application for evidence in support of Israeli proceedings). In *In re Application of Darmon*, No. 17-mc-80089, 2017 U.S. Dist. LEXIS 121932, at *8 (N.D. Cal. Aug. 2, 2017), the court granted an *ex parte* application for discovery after finding that the "Israeli trial court is a court of general jurisdiction and conducts impartial adversarial proceedings in which the litigants have a right to be heard, to present evidence, to have legal representation, and to appeal." Examining the second Intel factor, the court in *In re Murchinson Ltd.*, No. 2:23-mc-191, 2024 U.S. Dist. LEXIS 24321, at *10 (C.D. Cal. Jan. 26, 2024) likewise granted *ex parte* relief in support of Israeli proceedings because "nothing [] suggests that the Israeli court would be unreceptive to the discovery that [applicant] seeks, provided that it otherwise satisfies the requirements for admission under Israeli law."). There is still nothing in Israeli laws or procedures that Israeli courts would be

unreceptive to the documents and records sought in the Application, and this factor thus weighs in favor of granting the Petition. Yaari Decl. ¶ 51.

    3. <u>The Application Comports With Israel's Law of Evidence</u>

Third, a district court may consider "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 264–65.

Other courts have determined that Section 1782 discovery does not circumvent Israeli law on proof-gathering. *See In re Klein-Bentsur*, No. 2:18-17218, 2019 U.S. Dist. LEXIS 25472, at *11 (D.N.J. Feb. 15, 2019) (granting application in support of Israeli proceedings and noting that "[n]othing in the record suggests that Petitioner's application is 'an attempt to circumvent foreign proof-gathering limits.'" (citing *Intel*, 542 U.S. at 264–65)); *In re Application of Darmon*, 2017 U.S. Dist. LEXIS 121932, at *8–9 (N.D. Cal. Aug. 2, 2017) (granting *ex parte* application and noting that application did not circumvent Israeli proof-gathering limits as "[e]vidence from third parties is generally admissible in Israeli courts provided that the evidence otherwise satisfies the requirements of admissibility under Israeli law"); *In re Murchinson Ltd.*, No. 2:23-mc-191, 2024 U.S. Dist. LEXIS 24321, at *11 (C.D. Cal. Jan. 26, 2024) (granting *ex parte* application and noting that "Courts have held that this factor is satisfied unless the foreign court prohibits the applicant from gathering the information sought.").

Again, there is no indication that Israeli law in the context of this Application

is any different from the prior applications granted by other courts. Israeli law permits extraterritorial fact-finding during a lawsuit, and its courts regularly allow discovery and admit evidence of the type sought here. Yaari Decl. ¶ 51. Nor does the evidence sought herein, in the form of financial records, documents, and communications, violate any restrictions under Israeli law on evidence gathering. *Id.* ¶ 54.

    4.  <u>The Requests Relate to Discrete and Recent Transactions Over a Limited Time Period</u>

Fourth, courts consider "whether the discovery requests are 'unduly intrusive or burdensome.'" *Sergeeva*, 834 F.3d at 1199 (quoting *Intel*, 542 U.S. at 264–65).

A draft of the document requests is attached as Exhibit F to the Declaration of Robert B. Kearney. The document requests to JP Morgan Chase seek documentary evidence relating to discrete transactions taking place between September 2024 and August 2025 from an identified account. The document requests to Province of Reconciliation and CEEC.CHURCH seek documentary evidence in the form of documents and communications. These requests are in line with requests previously granted by courts in this Circuit and narrowly tailored. *In re Vedam*, 2022 U.S. Dist. LEXIS 219637, at *13–14; *see also In re Glozman*, 2026 U.S. Dist. LEXIS 22687, at *12–13 (granting application where it sought information from specifically identified accounts at financial institutions during a limited timeframe).

The discretionary *Intel* factors therefore all weigh in favor of granting the Application.

## V.   <u>CONCLUSION</u>

In light of the foregoing, Applicants respectfully submit that all of the requirements of 28 U.S.C. § 1782 are met and each discretionary factor identified by the *Intel* Court weighs in favor of granting the Application.

WHEREFORE, Applicants respectfully request that this Court enter an Order:

(a) exercising its discretion, pursuant to 28 U.S.C. § 1782, and granting this *ex parte* Application for Judicial Assistance;

(b) granting the Applicants leave to conduct discovery pursuant to the Federal Rules of Civil Procedure, including, but not limited to, leave to serve the subpoenas, in substantially the same form as the Proposed Subpoenas attached as Exhibit F to the Declaration of Robert B. Kearney filed herewith;

(c) reserving jurisdiction to grant Applicants leave to serve follow-up subpoenas on any other person or entity as may be necessary to obtain the evidence described in the Application; and

(d) granting such other and further relief as this Court deems just and proper.

Dated: February 26, 2026          Respectfully submitted,

*/s/ Juan J. Mendoza*
SEQUOR LAW, P.A.

24

Juan J. Mendoza
Fla. Bar No.: 113587
1111 Brickell Avenue,
Suite 1250
Miami, Florida 33131
Telephone: 305-372-8282
Facsimile: 305-372-8202
jmendoza@sequorlaw.com

Robert B. Kearney (*pro hac vice* forthcoming)
1200 G Street N.W.
Suite 340
Washington, D.C. 20005
Telephone: 202-900-8740
rkearney@sequorlaw.com

*Counsel for Applicants YS Gold Real Estate Limited and YS Gold Investments Limited*